May it please the Court. Good morning, Your Honors. My name is Rajika Shah with the law firm of Schwartz, Grimberg, Boyd, and Rader, and I'm appearing on behalf of Appellant Kacikbarian and all others similarly situated. I would like to reserve five minutes of my time for rebuttal. This case is no longer about Armenian genocide. It's about the application of a fairly pedestrian, 100-year-old banking statute to banks who choose to do business in California and therefore agree that they will pay out to California residents any deposit accounts they may have discovered. California Code of Civil Procedure, Section 348, providing no limitations period for the return of bank deposits, is not concerned with whether or not the original depositor was Armenian, Turkish, or any other nationality. The banking statute applies equally to all banks and is not at all concerned with how or why the money was left at the bank. Turkey has no interest in preventing a bank from agreeing to pay old deposit accounts that may have been found by California residents as a general condition of doing business here, but California has a profound interest to California residents. Your Honors, the District Court erred in finding that California's choice of law test mandates the application of Turkish law. The District Court found at Step 1 of the analysis that assuming that plaintiffs can invoke the delayed discovery rule and therefore fall within the exception to California's borrowing statute for California citizens, the laws of California and Turkey are different. So Counsel, do you mean to say then that if I put in deposits in Kentucky into Bank of America or Wells Fargo, if they're operating there, that irrespective of whatever any statute of limitations might be on Bank of America's obligations to me in Kentucky, I can always come to California and collect those because Bank of America is here? If you have a California citizen whose claim accrued after they became a California citizen. Why would the fact that California citizens should make a difference? Because the exception to California's borrowing statute requires that the claim have accrued after the plaintiff became a California citizen. Is that in 348? That is in the borrowing statute, section 361. And here, the District Court expressly assumed that Mr. Berrien's claim had accrued after he became a California citizen. So if I put the deposit in Kentucky and then blow through whatever statute of limitations I have in Kentucky, as long as I become a citizen of California, I can still maintain the cause of action? If the plaintiff is a citizen of California If I move to California and acquire citizenship here, which is fairly simple, all I have to do is be physically present with the intent to remain, then I can recover against the bank on deposits that I had in Kentucky, even though I have now blown through the statute of limitations in Kentucky. Judge Bybee, that is correct. As long as the claim accrues after the plaintiff is a California citizen. That is the deal. What do you mean, as long as the claim accrues? Because of the borrowing statute. The California's borrowing statute contains an exception. It will, California's borrowing statute will apply the law of a foreign state or foreign jurisdiction if the claim arose in that foreign state. If I put the deposits in Kentucky when I was a resident of Kentucky, did the claim arise in Kentucky or did it accrue in Kentucky? Why would it accrue in California? Well, whether, when it accrues in California is a question of California law. The district court expressly assumed for the purposes of its choice of law analysis that Mr. Berrien's claim had accrued in California. How does the case of Hunya v. Chase Manhattan affect this, which focused in large part on what it called after-acquired residence? The difference between Hunya, Hoon, I'm not sure how to pronounce it either. Eddie Hoon, probably. The difference between that case and our case is that in Hoon, the court found that in fact those plaintiff's claims had accrued in 1975 prior to the time that they became California citizens. And therefore, the primary connection with California of those plaintiffs was that they did have an after-acquired residence. That simply is not the case here, where the district court expressly assumed that Mr. Berrien's claim accrued after he became a California citizen. So at this point, if you were not successful in overturning the class certification, but were left with Mr. Berrien as your sole plaintiff, you have to make a decision. You have an assumption that his claim accrued just for purposes of application of the law. But then what would happen next? It would be proceeding to determine factually when it accrued? Correct. Those factual findings would be made on remand at the district court, Your Honor. That's correct. Here we are looking solely at the choice of law analysis that the district court engaged in, where the district court erroneously failed to consider California's profound interests in applying its banking statute law that has been on California's books continuously since 1874, since the time that the rules of civil procedure in California were codified, and failed to consider that Deutsche Bank expressly came into California knowing that that was the deal that California had made. Turkey, on the other hand, has no interest in preventing Deutsche Bank from voluntarily agreeing to make that deal. Deutsche Bank chose to come here. It voluntarily waived the 10-year safe harbor that it would have had in Turkey for California residents whose claims accrue after they become citizens. And therefore, Deutsche Bank is subject to banking statute. California has a profound interest in making sure that its residents and citizens will be able to have its laws applied to them. If at the outset, because obviously there's been some change in the law at the time of the filing of your suit, you indicated it didn't really matter if this was Armenians or Turkish citizens or Vietnamese. And yet, throughout the briefing, it seems that the description of governmental interest or the interest of the state is tinged with this history that has gone on with the Armenians. So how do you square that with your statement at the outset that it doesn't really matter who is the plaintiff here? Judge McKeown, I think the main difference is that there has been a change in the law. At the time that the appellate briefs were written, and indeed for a fair bit of time during the proceedings in the district court, the law in this circuit was the second decision in Mosesian v. Victoria v. Sigurum, which did find that the special statute that California had enacted regarding quote-unquote Armenian genocide victims was constitutional. That case, of course, went to the en banc panel and cert was denied in June of this year. At the time that this briefing, this appellate briefing was done, however, that statute was constitutional and thus the interests embodied by that statute also were considered legitimate. At this time, of course, there has been a change in the law, but that doesn't affect the fact that we have now a very general banking statute, a general applicability in a very general way. It has nothing to do with who the plaintiffs were, how the money came to be in a deposit account at Deutsche Bank, and why it is still there. That really, how all of those things came to be may form a backdrop, but it's really nothing more than window dressing in terms of the legal choice of law analysis that the court should conduct. So could you walk us through then your view of the McCann factors absent any particular history of any particular origin? Absolutely, Judge McKeown. At the first step, we agree with the district court that assuming Mr. Barian falls within the accrual exception to the borrowing statute, that he is not at the first step, then California law would find that Mr. Barian's claim is timely, whereas Turkish law would not. So that is a conflict. At step two, Your Honors, the court erred in finding, as we discussed previously, that Mr. Barian's claim that California's interest is in applying its law to an after-acquired citizen. This is not the Hoon case. Here, we have the claim accruing after Mr. Barian became a citizen. Second, we also have Let's just stop there. Just run through the facts quickly. Just run through your timeline so I understand where Barian's claim arises in California. Your Honor, it is not our contention that the claim arises in California. I believe the claim probably did arise in Turkey, which is where the deposits were made. However, the district court expressly assumed that the claims accrue in California. By accrue, you mean what? By accrue, we mean that all of the elements of the claim had come to fruition. So whatever the elements of the I guess I don't understand what that means. And how is that different from a claim arising? The claim is apparent in Turkey in the early part of the 20th century. So how does the claim accrue in California? I don't understand the difference between those two terms. Right. Judge Bybee, I believe that accrual is when all of the elements of the claim have been satisfied. So, for example, if the claim is for a breach of fiduciary duty or for a conversion, all of the elements, including the damages How are the claims not accrued in Turkey? Well, again, Your Honor, the district court expressly assumed for purposes of summary judgment that the claims did accrue in California. But for the sake of argument, I think that there has been some discussion in the briefing about, for example, the demand requirement. It's not That is a question of fact as to whether a demand was made for the return of the fact funds in Turkey, and that demand was denied. You don't have any facts on that, do you? Not from Mr. Varian. I think it is a question of fact. There are not facts But you don't have any facts that will support that claim, do you? I think that there are not facts either way, Your Honor. There are no facts to show that the deposit was withdrawn. There similarly are not yet facts to show that a demand was I still don't understand the difference between the arising and the accrual. I still don't understand what your argument is and how the claim accrued, how the district court could even assume that the claim accrued in California. Accrual, according to the McCann case, the California Supreme Court case of McCann v. Foster Wheeler, which the district court The statute uses the term accrued. What's the difference between accrued and arising? I think the difference between accrued and arising, for example, Your Honor, would be the very common case of, for example, a car accident. If I were to be involved in a car accident in Arizona, the accident may have occurred there, but there may be some later occurring injury as a result of the car accident that didn't become apparent to me until when I was back in California where I reside. That claim would have accrued in California even though the incident and the events, the transaction giving rise to the events at issue occurred in Arizona. I believe that is the difference. Usually accrual we think of arising as having a more geographic locus often, whereas accrual often includes various other principles like equitable estoppel, notice. If you have a kind of a claim where maybe you had cancer when you lived in Kansas, but you couldn't really sue for medical malpractice or whatever until it accrued in California because that's when you actually learned and you were diagnosed and you couldn't have been diagnosed before because of something, you know, so I think there are equitable principles that usually impact accrual, and I don't know if those come into play here or not. Do they? I believe that they do, Your Honor, because, although again, for purposes of the question that really is in front of this Court, we don't have to get into whether the claim actually accrued in California. Looking at all of California's equitable principles, that would apply the principle of delaying the schedule. Is the question of accrual important to resolving the second hand factor? I'm not sure. I'm not following Your Honor. Well, if we're going to start talking about the various interests of the jurisdictions at stake here, we probably need to know something about the nature of the claim and where it either arises and or accrues, and I agree with Judge McHugh, and I think that accrual has some kind of sense of timeliness. That is, it goes, I think, to some temporal factor as opposed to a location, but I'm still trying to figure out what it is under the second McCann factor, how we, I still can't figure out how this thing accrues in California and how we balance California's interest against Turkey's interest in light of that. Again, Your Honor, for purposes of this analysis and what the District Court actually held on summary judgment and why the District Court dismissed, we don't have to reach that. It just, it simply isn't before this Court, because... Counsel, if I could ask you a question on that. Yes, Your Honor. Is it your position that we're bound by an assumption that the District Court made? Because normally we can affirm on any ground supported by the record, so I would think we would not be bound by the District Court's assumption if our analysis of the undisputed facts led us somewhere else. I understand the point, Your Honor, and I do, I will answer the question. I want to quickly note that I see that my time is running down. I'll finish the question and then unless Your Honors have additional questions, I'll reserve the remainder of my time for rebuttal. That's fine. Your Honor, the District Court made one finding of fact in the record below regarding accrual, and that was in the context of a typicality analysis on class certification. That finding is simply not binding on the merits or on the finder of fact. There actually has been no finding of fact with regard to accrual. So given that that is the case, that the question of accrual actually is not before this Court, because the class certification order regarding typicality and statute of limitations where the District Court discussed accrual is not a final order, if the reasons for denying or for granting summary judgment are reversed and remanded, then there is still further opportunity to develop the record. In addition, what it is that we're really looking at here, Your Honors, is not the strength of the claims, but rather each jurisdiction's interest in applying its own laws. So with that I would Counsel, before you sit down, I'll ask Judge McHugh an additional question. We're going to give you some additional time for rebuttal, so don't worry. Okay. I am looking at page 40 of the District Court's May 2010 order. It looks like it's somebody's excerpt of records at page 82. Okay. And the District Court says as follows, it thus appears clear that Berrien's claim accrued before Berrien emigrated to California in 1988, either in 1915 when Hatchick knew or should have known that he had funds and assets remaining in the banks, or no later than the family openly discussed the bank accounts and assets. Where did the District Court assume that the claim accrued in California? The District Court made that assumption in its order on summary judgment. Okay. Can you give me a page or citation so I can find it? Yes, I can, Your Honor. If you bear with me for just one second. That is at excerpts of record 28 from the order on summary judgment. The District Court said, applying the governmental interest test here, the Court finds at step one that assuming plaintiffs would be able to invoke the delayed discovery rule, there would be a significant difference between California law on the one hand and either Turkish or German law on the other. It was in the context of class certification, as Your Honor correctly pointed out, that the District Court did make a finding of fact on accrual. But pursuant to And it looks like the District Court found that you can't invoke the delayed discovery rule. For purposes of a typicality discussion in determining whether Mr. Berrien's claims are typical such that he is an adequate class representative. But pursuant to Miles v. Merrill Lynch and Co. 471F324 at 41, the determination as to a Rule 23 requirement is made only for class certification and is not binding on the trier of facts, even if that trier is the class certification judge. Therefore, Your Honor, when the court, when the District Court came to looking at summary judgment, it declined to make a finding of fact on the question of accrual, but in fact actually assumed that Mr. Berrien's claim had accrued after he became a California citizen. Thus, accrual remains a question of fact for the fact finder on the merits. Thank you. So, one question, counsel. Yes, Your Honor. So if we disagree with the court's, the District Court's conflicts analysis on the assumption he made, then do I understand, you'd be saying then we should remand so he could make findings on the summary judgment? That's correct, Your Honor. Okay. And what about the class? Is that still being appealed? The class is being appealed, Your Honor. We believe that the District Court erred in its ascertainability analysis by failing to find that there was no means, no administratively feasible means for ascertaining the class. In fact, here, plaintiffs have submitted a newspaper notice that was published pursuant to Turkish law, a notice of escheat. These notices are, were required to be published, and therefore, there is, the notices constitute an administratively feasible means to identify the class members because there will be a finite number of notices that are available in the archival records. Yet, the District Court failed to allow plaintiffs to, first failed, excuse me. I understand. I don't want to take you at too much length here. Your time is up, and Judge McKeown is going to give you some extra rebuttal time. I think my question was because, although the briefing had covered the class action, the issues, you really hadn't mentioned those in your argument earlier. Yes, Your Honor. So I was wondering if you had abandoned those. I understand you have not. No, Your Honor. I should have been clearer and mentioned that I expected to address class certification primarily on rebuttal, but no, those arguments have not been abandoned. Let me just get one thing clear in my mind. Since the statute in California says there's no limitation, then you wouldn't have the typical question of, well, is there equitable tolling or, you know, that sort of thing. So, as I understand it, accrual is only relevant for purposes of potentially determining Turkey versus California. Is that correct? Actually, Your Honor, I believe that factors such as equitable tolling, delayed discovery would go into the accrual analysis once the court finds that California law applies. Well, maybe I'm missing something here, but if California law applied and there's no limitations, how do those factor in? Well, Your Honor, it makes a good point. I mean, I'm just trying to think. Then you'd move for summary judgment and say, if California law applies, here is my claim. There's no statute of limitations on it. But if California law applies and I should win, and then they would move to dismiss for statute of limitations and the court would probably say, I'm not giving an advisory opinion, would say, well, wait, there's no statute of limitations, so that's not a very good defense. Do you have any others? So I'm now really trying to understand from a legal perspective where accrual fits into the equation. Maybe you want to think about that and come back on rebuttal. I will do that, Your Honor. Thank you very much. Judge McEwen, may I come directly to the question that you just asked my opponent, which is where does accrual come into this case? The answer is one place only, and it's in applying California's borrowing statute, section 361. I do not think it is correct, as my opponent said, that Judge Morrow assumed that the claim accrued in California. To the contrary, when she ruled on the second class certification motion, she found that Mr. Berrien could not invoke his delayed accrual arguments because she found that the account holder fled Turkey in 1915, taking with him the very documents on which Mr. Berrien now is relying. She found that the family was openly discussing the accounts that had been left behind in Turkey in the 60s and 70s, and in the excerpts of record, you'll see the documents on which Mr. Berrien is relying. And these are documents that his uncle, the person from whom he claims to have inherited this claim, it's at SER 186, put into an envelope which he marked property deeds in Turkey and Deutsche Bank papers, Constantinople branch, and that he dated September 17, 1962. So in light of that, the district court was clearly correct that Mr. Berrien cannot invoke these delayed discovery doctrines that he was trying to rely on to bring himself within the exception to California's borrowing statute. And may I come back to this point as to whether Judge Morrow assumed that the claim accrued in California. She didn't, and she didn't need to, because she didn't need to reach the issue as to whether the borrowing statute barred Mr. Berrien's claim. It does, because as my opponent admitted this morning, the claim arose in Turkey. The borrowing statute says when a claim arises in another jurisdiction and is barred by the law of that jurisdiction, then it's barred in California, unless you have a California resident who is a resident of California at the time his claim accrues. And Mr. Berrien cannot possibly invoke that exception, given the evidence that I just discussed. Now, it didn't matter whether Mr. Berrien could invoke the exception to the borrowing statute, because the California statute So is it your contention, counsel, that in 361, that when the cause of action arises and when the time it accrues are referred to the same time period? They conceivably, they might not, Judge Bybee, because there is a geographical, where something arises is a geographical question. In the Hume case, this court And when it accrues is a temporal question. Is that right? That's correct. There could be a gap if a plaintiff, if a hypothetical plaintiff could invoke some sort of delayed accrual rule, as this plaintiff cannot. So there could be a difference. There isn't in this case. Did Judge Morrow resolve the question of the delayed accrual rule? Not in her summary judgment opinion. She held, I think correctly, that she didn't need to decide where or when the claim accrued for California purposes, because under McCann, she was bound to apply Turkey's limitation law. And that doesn't include concepts of delayed accrual or tolling. And so it was irrelevant as to when it accrued or whether it might have been tolled in California. Did you take a position as to whether there was a factual issue or not on the accrual for purposes of the borrowing statute and whether it could be resolved on summary judgment? We took the position that the claim was clearly barred by the borrowing statute because it arose in Turkey, and that if Mr. Barian wanted to invoke the exception, then the burden was on him to come forward with specific concrete evidence that would allow a reasonable jury to appear in his favor on that, and that he had not. Now, Judge Morrow didn't need to rule on the applicability of the borrowing statute on summary judgment, because she correctly found that under McCann, it didn't matter whether he could bring himself within the exception. In McCann, the California Supreme Court says, even if you can bring yourself within the exception to the borrowing statute, so I'm not required to apply the law of Turkey by the borrowing statute, we still have to do the governmental interest analysis. And having done that analysis, Judge Morrow correctly found that Turkey had the predominant interest. And that, Judge Morrow wrote, McCann is indistinguishable from this case. And that's clearly correct. In McCann, you have a claim by a current California resident barred by the Oklahoma repose statute. The claim is based on conduct that happened in Oklahoma when the plaintiff was a resident of Oklahoma in the Hoon case. In McCann, when did the claim accrue? Well, the claim accrued – well, it didn't accrue at all in the sense that the statute of repose wasn't an accrual statute. The claim – Well, the Court says there's a difference between – in the way that you do it. If you have a statute of repose, then it happens when the claim arises, irrespective of when it accrues. If you have a statute of limitations, then we measure it from the time of accrual. And so that actually turns out to be a pretty significant difference. But don't you have to resolve the question as to when the claim arose or accrued for purposes of determining whether 361 applies? If you're applying 361, absolutely, yes, but it doesn't actually get the plaintiff anywhere because assuming that he can bring himself within the exception by proving that it accrued when he was a resident of California, then you still have to do the governmental interest analysis. And under McCann and under the Hoon case, that still leads you back to a mandatory application of Turkish law because that's where this account was held, when this person's grandson – So does the governmental interest require us to measure the interest as of the time the cause of action arose? Or can we consider the time when the cause of action accrued? But when do we measure the – at what point do we measure the governmental interest? Turkey may not care a whit what happens to – we don't have any statements from the Turkish government at this point. I assume that the government hasn't contacted the State Department to say there's this litigation going on in California. We regard this as a real insult to Turkish interests. We do see that sometimes in cases. Well, Your Honor, actually, in fact, there is in the record such a statement from the Turkish ambassador and I'm going to try and find it very quickly. It's at docket entry number 125. It's a letter from the Turkish ambassador to Judge Morrow dated February 23, 2007. And so that is in the record. But I don't think that's required. I mean, there was no statement from Oklahoma that, you know, this is important to us. It really was. The California Supreme Court wasn't taking a case-by-case. Okay. So back to my question. So when do we measure the governmental interest? As of the time that the cause of action arises? As of the time it accrues? Or just as of a time whenever we're thinking about it, which would be now? Well, Your Honor, I think it has to be when the conduct is taking place that leads to the claim. I mean, the bank is doing – Okay. But is that when it arises or is that when it accrues? I think it's when it arises back in the early 20th century when the banking relationship is actually taking place. When did this statute come into being? I'm sorry, Your Honor. Which statute? The California statute. The section 348. The statute – the no statute of limitations. That's very old. That's late 19th century. I forget the exact date, but it's quite old. So the California statute of limitations or no statute of limitations was in effect at the time this claim arose? That's correct, although there was no connection to California at that point. I understand. I'm just trying to – Yes. This plaintiff, of course, didn't come to California until 1988. I understand that. But coming back to your question, Judge Bybee, I think the answer has to be that you have to look at it, at the interest when the relationship that gives rise to the claim is taking place, when the plaintiff's grandfather has a bank account in Turkey, because the McCann court looks at the interest of a jurisdiction in attracting business and in ensuring that businesses have reasonable guarantees of protection from untimely claims. So it's not a question I thought about before you asked the question, Judge Bybee, but I think that's the answer. And then in our submission, this attempt to qualify the Turkish statute of repose by California law delayed accrual and tolling doctrines just cannot be successful. I think the clearest case on that is McCann itself. The California Supreme Court applied Oklahoma's statute of repose, including its trigger, which was completion of the building project that gave rise to the injury. If it had applied California's accrual rule, then it would have had a ten-year repose statute, but running from the delayed discovery. And so we think the case law just precludes this mix-and-match type approach that the plaintiff is advocating here. And, in fact, even if in theory one could qualify Turkey's statute of repose, which expired in the 20s by California or federal tolling or delayed accrual rules, that wouldn't work here because, you know, in circumstances where you have the account holder fleeing with the documents, you have the family talking about the bank accounts in the 60s, you have them in an envelope dated 1962 that says, like, here are the Deutsche Bank documents, none of those documents can excuse this almost century-long delay in filing this claim. Your Honors, I'd like to address class certification, if I may, unless there are questions on limitation that I should address first. An affirmance of the district court's decision on summary judgment will, of course, be dispositive here. Mr. Barian has no individual claim. He can't represent a class. There are, of course, additional class certification-related issues that the court could reach. We think that Judge Morrow correctly held that Mr. Barian had not shown that the class would ever be ascertainable. And we heard this morning that really the ascertainability argument now is based on this notice from 1936. It's a notice that the Turkish Central Bank published saying, here are accounts that have been dormant for 10 years, and they're arguing that somehow that allows us to identify present-day class members. Judge Morrow looked at this very carefully. It's, in her opinion, at ER 68 through 70. First of all, she noted that there was no evidence of any more of these types of notices. In fact, the plaintiffs refused to authenticate this one because it came from an anonymous source. Judge Morrow didn't get to this issue. But, of course, relying on these types of notices is totally inconsistent with the key thesis of their claim, which is the bank kept the deposits for itself. So these notices, which are notices from the Turkish Central Bank saying, various banks have turned these over to us as dormant accounts, would be totally inconsistent with that. And Judge Morrow correctly held that notices from the 30s wouldn't help identify U.S. resident heirs of people who had accounts between 1875 and 1915. And, really, at argument, Judge Morrow asked the plaintiff's lawyer to explain, and as she says in her opinion, she really couldn't explain, and it was totally speculative. And the fact that these notices wouldn't help us identify current-day U.S. resident heirs of people who had deposits in that time is very clear from what happened when the plaintiffs brought forward these two proposed claims. You know, we had to take discovery. We did written discovery. We took their depositions. And it became very clear that they had no good faith basis to allege that they were, in fact, the descendants of the person whose name was in this notice. It was just a linguistic argument. Our name is arguably similar to and perhaps derived from the same root as this person's name. And then we discovered that the account reflected in the notice from the Central Bank was held in Izmir, which is on the Aegean coast. These people's ancestors lived square across the other end of the country, 650 miles away.  How can you say that we can say that the person listed in this notice is related to these people who are California residents? And there was a spectacle where the plaintiff's lawyer came up with this narrative to say, well, the name maybe reflects that he was a bishop, and maybe a bishop would have gone traveling the diocese to see the faithful. And maybe while he was 650 miles away from home, he may have opened a bank account. And so, I mean, not only did that show that these people had no good faith claim, but this is just the antithesis of what we need here, which is a reliable and administratively feasible way of identifying class members without extensive individualized inquiry and many trials. So that notice in no way helps them meet their ascertainability threshold. Can I go back to the weighing of the interest? Because in McCann, the court did say that even if you have someone, if you have a statute that's for the benefit of California residents, that even if the injury occurred outside of California, that California has an interest in that particular statute. So given that language, why is it that Turkey's interest outweighs California's interest when California has a statute which is to be for the benefit of people who live here, who are residents of California? That's right, Judge. At step two of the governmental interest analysis, the step where you say, do both jurisdictions have a legitimate interest, yes, the California Supreme Court in McCann referred to the Castro case. That was a case where California has a statute that says vehicle owners, in that case rental companies, are liable if the driver injures someone. And this accident happened in Alabama, and the California Court of Appeal in that case said, okay, California has an interest there, because otherwise California residents may end up dependent on the state for medical disability unemployment benefits. But at step three of the governmental interest analysis, the California Court of Appeal said, well, Alabama's interest would be more impaired because all the events happened there. So, yes, at step two there was a legitimate interest, but it wasn't a significant one, and it wasn't so significant that it outweighed Alabama's interest in being the jurisdiction that governs events happening within its borders. Same thing in the offshore rental case, which is the second case. That was a California statute that says, California businesses can sue for injury to their key employees, and there the California Supreme Court says, California, yes, has a legitimate interest here, because the California economy is going to be impacted if key business people are injured. But at step three... Is it fair to say that most of these cases really boil down to one thing, and that's step three? That's certainly the case for those two cases, yes. There was a recognition that there may be some legitimate interest in applying the California permissive statute. Is that true here, really? It really isn't, Your Honor, because, you know, the after-acquired residence really isn't a substantial interest. And that's clear from this Court's decision in Wynn. And it really, just the after-acquired residence really isn't a significant interest for California. This is not a case where someone has been, a California resident has been injured in another state and otherwise would be dependent on public assistance. These are claims arising from business that took place a century ago between a Turkish resident depositor and a Turkish branch of a German bank. There is really no nexus to California. So I would argue that even at step two, you would say that there's no California interest. But even if the Court disagrees with me, at step three, I think it's just so clear under McCann and under Wynn that California's interest, if any, is heavily outweighed by the interest of Turkey as the place where. And your position is that that would be the end of the analysis. You don't need the borrowing statute or any other analysis. That's correct. Although he loses under the borrowing statute. I understand your position. If I may come back to my final point on class certification, we had argued below and Judge Morrow in her summary judgment opinion agreed that the number of individualized issues that she had to adjudicate and to consider to resolve the summary judgment motion on Mr. Darien's individual claim showed that the case couldn't be tried as a class action because those same individualized issues would predominate for every class member. We think that that's clearly right. In their reply and in some of the post-briefing correspondence relating to supplemental authority, the plaintiffs have made a couple of arguments that they hadn't raised before. And we think those are waived because they weren't presented properly below or in their opening brief. And the arguments are, first of all, that Deutsche Bank had a common policy of not repaying Armenian depositors. We think that, first of all, the Court shouldn't reach that because it really wasn't presented properly here or in the Court below. There's no evidence of that. Duke's and this Court's decision in Ellis against Costco, 657 F3rd 970, showed that when you're relying on a common policy, you actually have to prove that there was a common policy that affected the class as a whole. And then in Wang against Chinese Daily News, this Court makes clear that even if there's a common policy, you've still got to consider whether there are individualized issues that would have to be adjudicated that would predominate, as they would be here. All the questions that go to, does this person have standing? Is this claim time-barred? What happened to this person's ancestor's account? And then the other point that's just thrown into their reply brief without really explanation is that there may be class-wide fluid recovery methods. We think, again, that wasn't properly presented below. There was just a suggestion that it might be possible to come up with some kind of expert who could deal with all these issues. We think that that approach doesn't survive Duke's. It's based on the Marcos case from this circuit, where there was an approval of statistical sampling that in that case was found to be an extremely accurate way to deal with class claims. We think that that really cannot survive Duke's, where the Supreme Court discussed the Marcos case and said that that case could not be adjudicated in that way. I see that my time is up. Unless there are further questions, I respectfully submit. Thank you. You've used up your time, but we're going to give you two minutes for a rebuttal. We'll add that back on the clock. Thank you. Thank you, Your Honor. I have just a few points to make in response. First is a plaintiff does agree with the court that accrual and the application of Section 348 are conceptually inconsistent and therefore mutually exclusive. Therefore, the district court correctly assumed that the borrowing statute exception had been met. A second point that we would make is that regarding when the governmental interest test looks to the point of when the claim arose or when it accrued, we would say in this case it really doesn't matter, Your Honors, because the California statute of limitations was on the books well prior to either of those events occurring in this case. And, in fact, the California Supreme Court noted in McCann that we have to have some way of measuring the governmental interest. If we measure California's interest in 1918, the fact that you have 348 on the books is irrelevant. California has no interest as of 1918. It doesn't have any interest in this case, under your theory, until Mr. Berrien becomes a citizen of California. Now, the question is are we measuring California's interest as of the time Mr. Berrien comes, as the time that his claim accrues? Are we going to measure it at the time the claim arose? Your answer has to be that we measure California's interest as of the time it accrues, because if we measure it at the time the claim arose, you're done, right? Judge Beide, you are correct, yes. Ultimately, it is the time of accrual that is when the choice of law analysis matters, yes. That is correct. A third point that I would make, Your Honors, is regarding Step 3 of the choice of law analysis. Again, we agree, Judge McCune, that it is Step 3 that is most important here, and at that step the district court really failed to consider the strong, profound interests of California in applying Section 348 as plaintiff's head brief to the district court. California has made the decision to allow any citizen to make a claim against any bank that does business here, and that's simply the decision that the legislature has made, and it made it a long, long time ago, and there hasn't been any change in that law. A couple of quick points on class certification. One is we would say that the common policy here is actually the escheat notices that plaintiffs did put into the record, and so it's not a new argument to be making. Those escheat notices are common to all banks. They're required by law to be published for every account, regardless of where the account was held. So that is actually a common policy that applies to every class member. And similarly, those escheat notices will deal with the damages issue, because the notices list the exact amount in the account that escheated. So all that would be left to do is a simple calculation of what the amount would be worth at present value today. It's a very simple damages calculation. There is no individualized issue there. Thank you. Thank you, Your Honors. Thank both counsel for your arguments this morning. Also the briefing, although overtaken by certain events, we appreciate the briefing as well. The case just argued is submitted and we're adjourned. All rise. This court for this session stands adjourned.
judges: McKeown, Gould, Bybee